[Cite as *In re A.A.*, 2016-Ohio-515.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

IN THE MATTER OF:  A.A.                  :
                                         :
                                         :        C.A. CASE NO. 2015-CA-29
                                         :
                                         :        T.C. NO. 15JA69
                                         :
                                         :        (Civil Appeal from Common
                                         :         Pleas Court, Juvenile Court)
                                         :
                                         :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 12th day of February, 2016.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

REBEKAH S. SINNOTT, Atty. Reg. No. 0072093, 115 N. Main Street, Suite F, Urbana, Ohio 43078
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1}   A.A. appeals from the disposition of the Common Pleas Court of Champaign

County, following his admission to four counts of gross sexual imposition involving young

children. The disposition included in-patient sex offender treatment. A.A.'s appeal focuses on the nature of the sentence imposed by the court. For the reasons that follow, the judgment of the trial court will be affirmed.

{¶ 2} On April 17, 2015, eight delinquent child complaints were filed with respect to A.A., age 13. Four of the complaints alleged rape of two children, ages 6 and 3, and four alleged gross sexual impositions of the same two children. The rapes and gross sexual impositions would have been felonies of the first degree and third degree, respectively, if committed by an adult. The two victims were cousins of A.A.

{¶ 3} The police report and A.A.'s various statements about the incidents were consistent. The first occasion occurred at A.A.'s house while his older brother was babysitting the young cousins. While playing with his cousins, A.A. led them to the laundry room and told them to pull their pants down. He then pressed his penis to their anuses. A.A. told his cousins not to tell anyone about this incident. The second incident occurred on a lower bunk bed in A.A.'s bedroom, which he screened with a blanket. A.A. again told the young boys to pull down their pants, and he placed his nose and face into each of the boys' "butt-cracks." The third incident occurred in the laundry room; A.A. placed his penis into the boys' anuses while touching their penises. The three incidents occurred over approximately six months. The police and children services were alerted to the abuse after the older cousin told his mother about the incidents.

{¶ 4} On June 10, 2015, A.A. admitted to the counts of gross sexual imposition, in exchange for which the State dismissed the counts of rape. The trial court ordered a presentence investigation and a sex offender assessment, and the dispositional hearing was scheduled for August 4, 2015.

**{¶ 5}** At the dispositional hearing, the trial court ordered A.A. to the Department of Youth Services for a minimum of six months and a maximum extending until the age of 21, but it suspended the sentence on the condition that he complete an in-patient sex offender program. After completion of the in-patient program, A.A. was to be placed on "level three probation with sex offender terms," to have no contact with the victims, and to have no unsupervised contact with anyone under the age of 12. He was also ordered to pay restitution to cover the cost of counseling for the victims.

**{¶ 6}** A.A. appeals, challenging the trial court's order that he complete an in-patient treatment program for sex offenders.

**{¶ 7}** The disposition in a juvenile court case is within the court's broad discretion and will not be disturbed on appeal unless an abuse of discretion is demonstrated. *In re J.W.*, 2d Dist. Montgomery No. 24507, 2011-Ohio-6706, ¶ 6, citing *State v. Matha*, 107 Ohio App.3d 756, 760, 669 N.E.2d 504 (9th Dist.1995). A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *See, e.g., In re C.S.M.*, 2d Dist. Greene No. 2015-CA-28, 2015-Ohio-4608, ¶ 25, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 8}** As stated above, the facts in this case were, for the most part, not in dispute.

**{¶ 9}** The presentence investigation showed that A.A. lived with his mother, father, and five siblings, received good grades in school, had friends his own age, and was active in social groups. A.A. was cooperative with the PSI process. He became very upset when questioned about his offenses and, in the view of the probation officer, "truly feels ashamed for, and embarrassed by, what he's done."

{¶ 10} The PSI noted that A.A.'s mother questioned whether there had been some misunderstanding or confusion about the physiological descriptions of the events, as recounted by the police officer who prepared the police report and by A.A. Mother suggested that, when A.A. referred to putting his penis in his cousins' butts, he did not necessarily refer to penetration, whereas the officer interpreted A.A.'s account to include penetration. According to Mother, A.A. had related to her that he did not have an erection when these events occurred and that he had only put his penis between the victims' "butt-cheeks"; Mother did not believe that penetration was possible without an erection.

{¶ 11} Considering A.A.'s lack of any history with the court, his good grades and social activities, his lack of disciplinary problems at school, his remorse, and his low score as a risk to reoffend (according to the separate Sex Offender Risk Assessment), the probation officer expressed his belief that A.A. did not need sex offender-specific treatment. A.A. had begun general counseling soon after the offenses were discovered, and the probation officer recommended that this counseling be continued to ensure a "healthier view of human sexuality" and learn "how to maintain and respect personal boundaries."

{¶ 12} The Sex Offender Risk Assessment was conducted by Robert Hays at Oesterlen Services for Youth, Inc., over three sessions. Hays observed that A.A. admitted that he had been sexually inappropriate with his cousins, and that A.A. exhibited "anxiety and emotionality," shame and embarrassment when discussing the sexual abuse. A.A. claimed to have been "curious" about sex after some health classes at school and increased conversations among his friends about sex and sexual attraction to

the girls in their class. A.A. denied any contact with pornographic materials and stated that he was taught by his parents that one did not have sex until marriage. A.A. lived with his parents, who had been married for 27 years, and with his five siblings; the family was close and engaged in frequent social activities together. A.A. had not previously exhibited behavioral problems at home or at school.

{¶ 13} With respect to the risk assessment, Hays's report noted that there is "no empirical evidence" that helps to predict sexual recidivism in juvenile sexual offenders, that the tool he used was designed to "estimate" risk levels for children age 12-18 who have committed a sexual assault, that its risk prediction "is strictly time limited," and that the assessment "becomes obsolete when there is a significant change in one or more risk factors." With all of these factors in mind, Hays concluded that A.A. had a low risk of reoffending based on the following factors: sexual interest, attitudes, and behaviors; historical sexual assaults; psychological functioning; family/environmental functioning; and treatment. Hays concluded that A.A. did not appear to be in need of "sexual offender specific treatment," but that he would benefit from continuing his existing counseling focusing on healthy sexuality and personal boundaries.

{¶ 14} At the dispositional hearing on August 4, 2015, the State requested a suspended sentence to the Department of Youth Services, with an order that A.A. be required to complete an in-patient program at Miami Valley Juvenile Rehabilitation Center. The State specifically requested that the court deviate from Hays's opinion (which was also adopted in the PSI) that sex offender-specific treatment was not necessary. Defense counsel emphasized that the professionals who evaluated A.A. did not think that sex offender-specific counseling was necessary and did not advocate for

in-patient treatment. Considering A.A.'s strong family support, defense counsel argued that "it would do more harm than good" to place A.A. in an in-patient treatment facility with "juveniles who have a much greater understanding and a much greater experience" than A.A.

{¶ 15} The trial judge questioned A.A. at length about his knowledge that what he was doing with his cousins was wrong, and yet he did it again each time. The judge also questioned A.A.'s father and defense counsel about the nature of A.A.'s current counseling; defense counsel acknowledged that A.A. was in general mental health counseling, and neither Father nor defense counsel could say whether the counselor had training in dealing with juvenile sex offenders.

{¶ 16} The court disposed of the cases as described above. The court suspended the DYS sentence on the condition that A.A. successfully complete an in-patient program for juvenile sex offenders at Miami Valley Juvenile Rehabilitation Center. The court stated that it felt the in-patient program was important because of the very young ages of the victims in this case, the significant difference in age between A.A. and the victims, and the repeated occurrences of the offenses, notwithstanding A.A.'s understanding that what he was doing was wrong. The court also stated that it wanted A.A. to have "the tools" to control his behavior for the rest of his life, rather than relying on "24, 7" supervision, as envisioned by his parents, because such supervision "wouldn't be appropriate for * * * the rest of [his] life."

{¶ 17} On the record before us, we do not find that the trial court abused its discretion in disposing of the case as it did. The offenses were serious, and the trial court was justifiably concerned with the very young age of the victims. Although the trial

court might reasonably have required less stringent treatment, as recommended by the PSI and the social worker who evaluated the risk of recidivism, it did not abuse its discretion in requiring in-patient sex offender treatment.

**{¶ 18}** The assignment of error is overruled.

**{¶ 19}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.


Copies mailed to:

Jane A. Napier
Rebekah S. Sinnott
Hon. Lori L. Reisinger